## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ECOCHEM AUSTRALIA PTY LTD., <br><br> Plaintiff, <br><br> v. <br><br> CST SYSTEMS INC., <br><br> Defendant. | Case No.    1:22-cv-4908 TWT <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Ecochem Australia Pty Ltd. ("Ecochem"), by and through its attorneys, Whitmyer IP Group LLC, for its Complaint against Defendant CST Systems Inc. ( "CST") alleges as follows:

## SUMMARY

1.     This is a civil action for breach of contract, trademark infringement, unfair competition, and for such relief as the Court deems just and proper.

## PARTIES

2.     Ecochem Australia Pty Ltd. is an Australian limited company having a primary place of business at 110 South Mountain Road, Upper Plenty, Victoria, Australia, 3756.

3.      On information and belief, CST Systems Inc. is a Georgia domestic profit corporation with an address of 1590 N. Roberts Road, Suite 201, Kennesaw, GA, 30152.

## JURISDICTION AND VENUE

4.      Subject matter jurisdiction exists by virtue of 28 U.S.C. § 1332, diversity jurisdiction, in that this is an action between a citizen of a state and a citizen of a foreign state, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      Subject matter jurisdiction also exists by virtue of 28 U.S.C. § 1331, federal question jurisdiction, in that this action arises under the laws of the United States.

6.      Subject matter jurisdiction exists over the state law claims by virtue of 28 U.S.C. § 1367, supplemental jurisdiction, in that the claims in this action are so related that they form part of the same case or controversy.

7.      This Court has personal jurisdiction over CST because CST is a citizen and resident of the State of Georgia and maintains its principal place of business and corporate headquarters in Kennesaw, Georgia. Upon information and belief, at all relevant times, CST has been authorized to do business and has been transacting or conducting business in the State of Georgia.

2

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because CST resides in the Northern District in Kennesaw, Georgia. CST has its principal place of business and corporate headquarters in Kennesaw, Georgia, and has, at all relevant times, conducted business in the Northern District of Georgia.

9.     Jurisdiction and venue are also proper due to the parties' choice of law provision in the Non-Exclusive Distribution Agreement dated May 24, 2016, which names Fulton County, Georgia, as the appropriate venue.

## FACTS

### Ecochem

10.     Ecochem is a world-wide leader in manufacturing and supplying cleaning products and systems for use on manufacturing lines, particularly in the corrugated packaging industry, servicing clients in Australia, New Zealand, Fiji, and North America.

11.     Ecochem is a green, eco-friendly, biochemistry-based company engaged in innovation, product development, and manufacturing. Ecochem is the holder of more than 20 patents and patent applications worldwide for its cleaning technologies and systems, well-known within its industry for its groundbreaking products and services. These patents and applications include US Patent Nos.

9,873,139, 10,835,935, 11,034,918, 11,085,007, US Application Nos. 17/360,664 and 17/036,380, and PCT App. No. PCT/AU2021/051009.

12.     In the corrugated packaging industry, the "converters" that manufacture the boxes also print information on the box material. There is currently a large amount of waste in time, ink materials, and equipment degradation due to the difficulty of maintenance.

13.     Facilities reduce the maintenance time from 10-60 minutes to 4 minutes using Ecochem systems. Facilities also save by avoiding damage to ink pumps, ink pump failure, and anilox roll refurbishment. Facilities can save from $100k to $150k annually in maintenance costs using Ecochem systems.

14.     Central to Ecochem's products is the Bintech system, an auto volume monitoring and delivery unit that helps manufacturers ensure that equipment is working correctly and manage stock.

15.     Ecochem produces a variety of cleaning solutions and makes them available under trade names such as Super BioClean 5G, Special Blade Clean 3G, Evolution Starch Off, and Evolution BioClean.

16.     Ecochem's products are fast-acting. Manufacturers using Ecochem's systems increase productivity by reducing the time a manufacturing line needs to be inoperable for cleaning.

17.    For example, Super BioClean 5G is designed for the corrugated packaging industry and is a water-based solvent/enzyme-based cleaning formula to liquefy dried ink safely and quickly without any corrosive effect on the equipment. Super BioClean 5G is known to reduce the cleaning time to as little as 4 minutes and has significant direct and indirect cost savings for production and maintenance costs.

18.    As another example, Special Blade Clean and Evolution BioClean are environmentally friendly water-based solvent ink remover for the packaging industry. Special Blade Clean and Evolution BioClean are known to provide at least an extra half-hour of production each day, allowing 5,000-10,000 extra boxes to be produced per shift and saving $20,000 per converter per year in maintenance and ink costs.

19.    As yet another example, Evolution Starch Off is designed for the corrugated packaging industry as a biodegradable enzyme control formula for starch removal without the use of traditional caustic or chlorine cleaners. Evolution Starch Off can be used overnight or during downtime, and reduces overall downtime, energy costs, water wastage, and waste process costs.

20.    Ecochem also provides service and installation of their systems, as well as research and development.

21.   Ecochem owns the following U.S. Trademark Registrations and Applications (hereinafter Ecochem's Marks):

| Registration/Application No. | Mark |
|---|---|
| 5,135,138 | CleanPrint Chemicals |
| 5,135,153 | Ecochem |
| 5,876,622 | CleanPrint Solutions |
| 6,404,522 | CleanPrint USA |
| 79/343,282 | Evolution BIOCLEAN |
| 79/343,283 | Evolution STARCH OFF |
| 97/150,211 | CLEAN PRINT USA |
| 97/560,520 | SUPER BIOCLEAN 5G |
| 97/560,544 | EVOLUTION BIOCLEAN |
| 97/560,566 | EVOLUTION STARCH OFF |

**Ecochem and CST's Relationship**

22.   Upon information and belief, CST is a supplier of brakes, chucks, shafts, and tension systems for the corrugated, converting, and paper industry.

23.     On September 15, 2012, Ecochem and CST entered into a distribution agreement (the "2012 Agreement"). Under the 2012 Agreement, CST was appointed as sole distributor of Ecochem's products within the United States.

24.     On May 24, 2016, Ecochem and CST entered into a Non-Exclusive Distribution Agreement, which was drafted by CST. (Ex. A, the "Distribution Agreement.")

25.     The Distribution Agreement was renewed for a period of five years on January 6, 2018. (Ex. B, the "Renewed Agreement.")

26.     At all relevant times, Ecochem has complied with the terms of the 2012 Agreement, the Distribution Agreement, and the Renewed Agreement.

27.     To enhance the relationship between Ecochem and CST and outside the requirements of the 2012 Agreement, in all agreements with CST, Ecochem has:

- provided CST free stock and equipment valued at over $150,000.

- sent Ecochem employees from Australia, including chemists and other industry experts, whenever CST experienced issues;

- provided installation training and sales training to CST's sales people and one on one in field training on many occasions; and

- expended nearly $1 million on the CST relationship, and spent more from then onwards.

7

28.     Though not required to do so under the 2012 Agreement, CST provided sales reports to Ecochem from 2012 to 2015.

### Conduct Following the Distribution Agreement

### Reports Due to Ecochem

29.     The Distribution Agreement provides a variety of reports to be delivered by CST to Ecochem. (*See* Distribution Agreement at 3.4.)

30.     Section 3.4.1 of the Distribution Agreement requires CST to provide Ecochem monthly "detailed summar[ies] of sales by product and sales office, details of customers, the quantities purchased by customer of each Product and the price per item for each customer, and activities undertaken in efforts undertaken to market and promote the Product." (Distribution Agreement at 3.4.1.)

31.     CST provided such sales reports between 2012 and 2020. Starting in 2020, CST ceased providing monthly sales reports, despite it being a contractual requirement.

32.     CST has also failed to provide a sales report from May 2020 to December 2021.

33.     CST has provided inadequate sales reports in 2022 that only detail the number of sales they have made.

34.    Section 3.4.2 of the Distribution Agreement requires CST to provide "updated cop[ies of] Current Customer list[s] and Potential Customer List[s]." (Distribution Agreement at 3.4.2.)

35.    CST failed to provide customer lists from May 2020 onwards, despite having provided them under the 2012 Agreement.

36.    Section 3.4.3 of the Distribution Agreement requires CST to submit annual marketing reports on or before July 1 of each year to Ecochem. "The marketing plan will include on an item-by-item basis of all the Supplier products, a marketing timetable, sales projections, channels and methods of distribution, nature and amount of advertising and advertising expenditure, and any other information that Supplier may reasonably require Distributor to include. Each marketing plan will contain specific information for the following 12 month period [] immediately following its submission and general estimates or projections for subsequent periods during which this Agreement remains in effect." (Distribution Agreement at 3.4.3.)

37.    CST has never provided adequate marketing reports/plans that meet the requirements of the Distribution Agreement to Ecochem.

38.    Section 3.4.4 of the Distribution Agreement requires CST to provide copies of "advertising and sales promotion materials" for review by Ecochem "not

less than three (3) weeks prior to the time of first use a copy of any of advertising and sales promotion materials." (Distribution Agreement at 3.4.4.)

39.    CST failed to provide advertising and sales promotion materials introduced from 2020 onwards.

40.    Section 3.4.5 of the Distribution Agreement requires CST to provide stock reports, and that CST's responsibility is "monitoring and controlling the Stock to ensure that adequate inventory levels are maintained at all times." (Distribution Agreement at 3.4.5.)

41.    CST failed to provide stock reports from 2020 until June 2022.

42.    Section 3.4.6 of the Distribution Agreement requires CST to provide monthly CST was required to provide Ecochem with leading six-month sales projections. (Distribution Agreement at 3.4.6 (CST to provide "six-month estimate[s] of possible orders for the Products.")

43.    CST failed to provide sales projections from May 2020 onwards until recently. However, CST's recent sales projections are inadequate, as they provide no detail and estimate future sales, which are lower than the past sales for each month reported.

Customer Relations and Acquisition

44.    In addition, the Bintech system is to be offered by CST in "all future installations." (*Id.* 3.3.3.)

45.    Upon information and belief, CST failed to offer or install Bintech systems to its clients.

46.    In addition, CST deducted $16,000 from the amount of money it owed to Ecochem for Bintech systems delivered years earlier, with no justifiable reason. This is in contravention of Section 7.3.1, which provides that the "Distributor will not be entitled to any credit for damage that occurred after delivery of the products." (Distribution Agreement 7.3.1.) This is also in contravention of Section 7.4, which provides payment and credit terms. (Distribution Agreement 7.4.)

47.    Further, CST was to "ensure the completion of an installation to the client's satisfaction within 6 months of the submission & acceptance of a purchase order for the installation unless defeated by the customer in writing." (Distribution Agreement 3.3.2.)

48.    Customers have complained to Ecochem regarding the level of service being provided by CST.

49.    For example, multiple CST customers have contacted Ecochem and asked for Ecochem to take over the account. In at least one instance, Ecochem

informed the customer that CST was the distributor and that Ecochem would talk to

CST. Ecochem immediately contacted CST and resolved the client's concern.

<u>Product Bearing Unapproved Packaging/from Unapproved Sources</u>

50.    Section 4.5 of the Distribution Agreement provides that:

> 4.5 <u>Packaging</u>. Supplier will ensure that the Products are
> packaged for export in the Supplier's customary manner
> and will label the Products to conform to Supplier's
> standards. Distributor may request that Supplier include
> Distributor's trademark or other information related to the
> Distributor on the packaging of any of the Products. Any
> such inclusion of Distributor's trademark or other
> information related to the Distributor on the packaging of
> the Products will be subject to approval by Supplier at the
> Supplier's sole discretion.

51.    Section 3.10.2 of the Distribution Agreement provides that:

> 3.10.2. Distributor will not directly or indirectly market,
> promote, sell, distribute, install, service, or develop any
> product which competes with the Products without
> Supplier's prior, explicit, written consent, which may be
> withheld in Supplier's sole discretion. Supplier reserves
> the right in its sole judgment to determine whether a
> competitive conflict exists.

52.    CST has breached the Distribution Agreement by selling product

bearing unapproved packaging.

53.    CST has also breached the Distribution Agreement by selling product

that competes with Ecochem's products.

54.    Pratt Industries is a large commercial manufacturer of corrugated cardboard. Pratt Industries uses Ecochem products, which CST has distributed.

55.    The below image of two totes (275-gallon containers) of product labeled "SUPER BIOCLEAN 5G" taken at a Pratt Industries location on or about June 2, 2022 by a manager at Pratt Industries. The tote in the left of the picture appears to be from Ecochem. The tote in the right of the picture does not appear to be from Ecochem. Ecochem has never furnished or approved the label shown on the tote on the right.



56.    Ecochem owns U.S. Trademark Application Serial No. 79/343,283 for its EVOLUTION BIOCLEAN brand. The below image shows a 55-gallon drum of product labeled "EVOLUTION BIOCLEAN," taken at a Pratt Industries location on

or about June 24, 2022. The CST Systems, Inc. logo appears twice on the label. On the bottom right of the label is an Ecochem trademark.



57.     Ecochem has never provided 55-gallon drums of EVOLUTION BIOCLEAN to CST, only 275-gallon totes. As such, Ecochem has never furnished or approved the label shown in the above image.

58.     CST also breached the Distribution Agreement by running unapproved advertisements.

59.     CST has been using advertisements bearing Ecochem's trademarks that have not been approved by Ecochem. For example, CST ran the following advertisement in the May 9, 2022, issue of Board Converting News, an industry publication:



60. In the March 28, 2022 issue, CST Systems ran the following advertisement:



61. In those issues, another Ecochem distributor, CleanPrint USA, also advertised Ecochem's products and systems.

62. CST has also marketed Ecochem products as their own and used Ecochem trademarks in doing so. Brochures publicly available on CST's website advertised SUPER BIOCLEAN 5G and EVOLUTION STARCH OFF without reference to Ecochem.



63.     In December 2022, CST's website began advertising InKlean as an "Anilox and Ink System Cleaning" product. The InKlean product directly competes with Ecochem's products.

64.     InKlean is made by Enviro-Tech Solutions Corporation.

65.     Enviro-Tech Solutions Corporation is also advertising a product called StarchKlean as Coming Soon. StarchKlean will directly compete with Ecochem's products. Upon information and belief, CST will begin selling StarchKlean.

## CAUSES OF ACTION

### COUNT I

### *(Breach of Contract)*

66.    Ecochem incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

67.    Section 11.2.1 of the Distribution Agreement makes failure to comply with material obligations constitutes breach of the Distribution Agreement.

68.    Material obligations include the Performance Targets listed in Schedule E, including that:

a. "Distributor will provide all reports within the timeframe dictated."

b. "Distributor agrees to offer Bintech to all current customers and will include the Bintech system in all future installations."

c. "Goods not rejected by written notification to Supplier within five (5) business days of use by client will be deemed to have been accepted."

d. "Distributor will pay all invoices for Products no more than 30 days after Products are released by Customs after arrival in the USA."

(Distribution Agreement Schedule E.)

69.     Section 11.2.2 states that a material breach includes when "The Distributor offers any unauthorized or unapproved products or services allegedly on behalf of Supplier."

70.     Section 11.2.5 states that a material breach includes when the "Distributor, any of Distributor's officers, directors, or principals, or anyone acting on behalf of Distributor violates any laws, rules, or regulations regarding the marketing, promotion, sale, distribution, installation, or service of any of the Products or commits a crime involving moral turpitude."

71.     Section 15 provides restrictive covenants preventing CST from engaging in enumerated activities for three years following the termination or expiration of the Agreement, including from selling competitive products.

72.     Ecochem provided notice of material breach on numerous occasions.

73.     CST has breached the Distribution Agreement in a variety of ways.

74.     CST did not provide timely reports to Ecochem.

75.     CST has failed to ensure client satisfaction.

76.     CST did not offer Bintech to all customers.

77.     CST did not reject goods within five (5) business days, but instead sought credit without basis years after receiving product.

78.   CST unilaterally claimed improper credits and therefore underpaid Ecochem for Product.

79.   CST did not pay all invoices within 30 days after Products were released by customs and as such owes Ecochem money.

80.   Ecochem has not been able to deliver shipments to CST because of their failure to pay the amount of money owed to Ecochem after more than 30 days.

81.   The sums owed to Ecochem by CST total at least $478,000.

82.   CST has been offering products or services bearing unauthorized or unapproved marks allegedly on behalf of the Supplier.

83.   CST has violated laws, rules, or regulations regarding the marketing, promotion, sale, distribution, installation, or service of any of the Products.

84.   CST has and will compete with Ecochem, in violation of the restrictive covenants.

85.   As a result of CST's breaches, Ecochem has and will suffer damages.

86.   As a result of CST's breaches, Ecochem has and will suffer lost sales and business opportunities.

87.   Ecochem's damages are not adequately compensable by money alone.

## COUNT II

### *(Trademark Infringement)*

88.     Ecochem incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

89.     Ecochem's Marks and the goodwill of the business associated therewith in the United States are of great and significant value to Ecochem and are highly distinctive of the services associated with Ecochem's Marks.

90.     CST, without the consent of Ecochem, has made use in interstate commerce of  Ecochem's Marks in connection with the sale, offering for sale, distribution and/or advertising of goods and services.

91.     CST's use of Ecochem's Marks trades upon the goodwill associated with Ecochem and Ecochem's Mark.

92.     CST's use of the Ecochem's Marks is likely to cause and, upon information and belief actually caused, confusion as to the affiliation, connection, or association of CST or their products or services with Ecochem or its products or services, and/or as to the origin, sponsorship, or approval of CST's products by Ecochem, all to the damage and detriment of Ecochem's reputation, goodwill, and sales and the unjust enrichment of CST.

93.    CST's actions complained of herein constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, the full extent of which is presently unknown but is substantial.

94.    CST's actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Ecochem to suffer irreparable harm, including harm to Ecochem and the substantial business and goodwill symbolized by Ecochem's Marks; Ecochem has no adequate remedy at law. Ecochem is therefore entitled to and seeks injunctive relief pursuant to 15 U.S.C. § 1116.

95.    Ecochem has also sustained damages as a direct and proximate result of CST's actions complained of herein in an amount to be proven at trial, including without limitation all CST's profits and/or gains of any kind, including intangible gains, resulting from CST's unlawful acts.

96.    CST's actions complained of herein have been willful, intentional, and made in bad faith. Ecochem is therefore entitled to enhanced and exemplary damages, including treble its actual damages, an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT III

### Federal Unfair Competition and False Designation of Origin

### 15 U.S.C. § 1125(a)

97.    Ecochem incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

98.    Ecochem's Marks is entitled to protection under Section 43(a) of the Lanham Act.

99.    CST's actions complained of herein are likely to cause and, upon information and belief have actually caused, confusion as to the affiliation, connection, or association of CST or their products or services with Ecochem or its products or services, and/or as to the origin, sponsorship, or approval of CST's products by Ecochem.

100.   Upon information and belief, CST has used, is using, and intends to continue using now and in the future in commerce Ecochem's Marks for the offer and provision of goods and services in such a way that has and will continue to cause confusion, mistake, or deception as to the affiliation, connection, or association of CST with Ecochem.

101.   CST's actions complained of herein constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

102.   CST's actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Ecochem to suffer irreparable harm; Ecochem has no adequate remedy at law. Ecochem is therefore entitled to and seeks injunctive relief pursuant to 15 U.S.C. § 1116.

103.   Ecochem has also sustained damages as a direct and proximate result of CST's actions complained of herein in an amount to be proven at trial, including without limitation CST's profits and/or gains of any kind, including intangible gains, resulting from CST's unlawful acts.

104.   CST's actions complained of herein have been willful, intentional, and made in bad faith. Ecochem is therefore entitled to enhanced and exemplary damages, including treble its actual damages, an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT IV

### (Unfair Competition under the Georgia Uniform Deceptive Trade Practices Act (O.C.G.A. 10-1-370 -- 375))

105.   Ecochem incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

106.   CST promotes its own products using the Ecochem Marks in the same markets, via the same channels of trade, and to the same potential customers as Ecochem does using Ecochem's Marks.

107.   Customers are likely to be confused as to the source, origin, or affiliation of CST's products and services and/or to be misled that the goods and/or services CST promotes in connection with, are affiliated with, sponsored by, or sourced from the same source as those sold under Ecochem's Marks.

108.   CST's deceptive trade practices have caused and may continue to cause damage to consumers.

109.   CST's misappropriation of Ecochem's Marks constitutes a deceptive trade practice.

110.   Defendant's deceptive trade practices have been knowingly willful and deceptive.

111.   As a result of CST's actions, Ecochem has suffered damages.

112.   As a result of CST's actions, Ecochem has suffered lost sales and business opportunities.

113.   Ecochem's damages are not adequately compensable by money alone.

114.   Pursuant to O.C.G.A. § 10-1-373(b), the prevailing party is entitled to its costs.

115.   Pursuant to O.C.G.A. § 10-1-373(b), a court may award attorney's fees to the prevailing party if the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive.

## COUNT V

### (Common Law Unfair Competition)

116.   Ecochem incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

117.   CST's sales of competing products bearing Ecochem's Marks constitutes unfair competition and a deceptive trade practice.

118.   Defendant's unfair competition has been knowingly willful and deceptive.

## COUNT VI

### *Attorneys' Fees Under O.C.G.A. § 13-6-11*

119.   Ecochem incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

120.   CST has acted in bad faith and has caused Ecochem unnecessary injury and expense.

121.   Accordingly, Ecochem is entitled to its reasonable expenses of litigation, including attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ecochem, prays for:

(a) an order preliminarily and permanently enjoining Defendant from the disclosure and misuse of Ecochem's confidential information, knowledge, technology, business plans, and trade secrets;

(b) an award of compensatory and economic damages for all injuries suffered as a result of Defendant's unlawful conduct;

(c) an award of punitive damages;

(d) an order disgorging Defendant's profits unjustly obtained as a result of its wrongful acts;

(e) recovery of Ecochem's costs incurred in bringing this action, including attorneys' fees, to the extent authorized by law;

(f) such other relief as the Court deems just and equitable under applicable law;

(g) an order preventing CST Systems, Inc. from directly or indirectly, alone or in association with or on behalf of any other person or entity from competing with Ecochem's business for a period of three (3) years following January 1, 2023, which includes:

1. Owning, maintaining, engaging in, lending money to, extending credit to, having any interest in, or being employed as an officer, director, executive, principal, or consultant of any other business that sells, markets, installs, distributes, or services any product that is competitive with those sold by Ecochem;

2. Inducing, encouraging, or soliciting any of Ecochem's employees, distributors, or actual or prospective customers to avoid, terminate, restrict or curtail any actual or prospective business relationship, with whom CST had material contact since 2022; and

3. Marketing, offering for sale, selling, providing, or distributing any product, service or process that: (a) of the same general type as, (b) performs similar functions as, (c) is used for the same purpose as, or (d)

competes for the same customers with, any of the products, services, systems, or processes that Ecochem researched, designed, developed, marketed, or sold since 2020; and

(h) an order preventing CST from using any of Plaintiff's trademarks.

## JURY DEMAND

122.   In accordance with Rule 38 of the Federal Rules of Civil Procedure, Ecochem respectfully demands a trial by jury on all claims and issues triable to a jury in this action.

Dated: December 12, 2022                    Respectfully submitted,

**FOX ROTHSCHILD LLP**

/s/ *Gerald T. Chichester*
Gerald T. Chichester
Georgia Bar No. 210202
999 Peachtree Street, Suite 1500
Atlanta, GA 30309
Telephone: (404) 962-1000
Facsimile: (404) 962-1200
Email: gchichester@foxrothschild.com

Michael J. Kosma (*pro hac vice forthcoming*)
Robert D. Keeler (*pro hac vice forthcoming*)
WHITMYER IP GROUP LLC
600 Summer Street

Stamford, Connecticut 06901
Telephone: (203) 703-0800
Facsimile: (203) 703-0801
Email: litigation@whipgroup.com
      mkosma@whipgroup.com
      rkeeler@whipgroup.com

*Attorneys for Plaintiff,*
*Ecochem Australia Pty Ltd.*