IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ECOCHEM AUSTRALIA PTY LTD., <br><br>Plaintiff/Counter Defendant, <br><br>v. <br><br>CST SYSTEMS INC., <br><br>Defendant/Counter Claimant/ Third-Party Plaintiff, <br><br>v. <br><br>CLEAN PRINT USA LLC and DICAR, INC., <br><br>Third-Party Defendants. | CIVIL ACTION FILE <br> NO. 1:22-CV-4908-TWT |

## OPINION AND ORDER

This is a breach of contract action. It is before the Court on the Third-Party Defendants' Motion to Dismiss [Docs. 46, 47]. For the reasons set forth below, the Third-Party Defendants' Motion [Docs. 46, 47] is DENIED.

### I.     Background[1]

This case arises from a dispute over an agreement between the Plaintiff Ecochem Australia Pty Ltd. ("Ecochem") and the Defendant CST Systems, Inc. ("CST") to distribute certain cleaning products. (Third-Party Compl. ¶ 19). CST

---

[1] The Court accepts the facts as alleged in the Third-Party Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

is a distributor "in the corrugated, converting, and paper industries," and Ecochem is an Australian company that manufactures products in those industries. (*Id.* ¶¶ 8, 10). The parties' business relationship began in 2012 when CST became the exclusive distributor of one specific Ecochem product in the United States. (*Id.* ¶ 11). Then, in 2016, the parties entered into a non-exclusive distribution agreement (the "Agreement") that increased the number of products that CST would distribute on Ecochem's behalf. (*Id.* ¶ 19). Under the Agreement, Ecochem agreed to protect CST's current and potential future customers and to consult with CST on any new potential distributors of Ecochem products. (*Id.* ¶¶ 23, 30).

CST claims that Ecochem breached the Agreement by failing to protect CST's business interests from other distributors. (*Id.* ¶ 36). Specifically, CST alleges that in 2018, another distributor engaged by Ecochem, Harper Love, began representing to entities in the market that it was Ecochem's exclusive distributor. (*Id.* ¶ 39). CST immediately demanded that Ecochem intervene, but CST claims that it ultimately lost customers over Harper Love's representation of exclusivity. (*Id.* ¶¶ 40–41). CST claims that the incident with "Harper Love was not an aber[r]ation" but rather "a sign of things to come" as Ecochem expanded its distribution network in the United States. (*Id.* ¶ 43).

In February 2022, Ecochem continued its U.S. expansion and formed a limited liability company, Third-Party Defendant Clean Print USA, LLC ("Clean Print"), to work in conjunction with Ecochem and Clean Print's

primary U.S. distributor, Third-Party Defendant Dicar, Inc. ("Dicar"). (*Id.* ¶¶ 49–50, 57). CST alleges that Clean Print and Dicar have solicited its customers using customer lists provided to them by Ecochem. (*Id.* ¶ 62). CST also alleges that Clean Print planned to find commercial success in the United States by converting major CST customers into Dicar and Clean Print customers. (*Id.* ¶ 63). CST claims that this customer poaching by Clean Print and Dicar continued throughout 2022. (*Id.* ¶¶ 64–88).

On December 13, 2022, Ecochem filed suit against CST, asserting claims of breach of contract, trademark infringement, and unfair competition and seeking attorneys' fees. CST answered on January 9, 2023, and brought counterclaims against Ecochem for breach of contract, breach of implied warranty, fraudulent inducement, negligent misrepresentation, and attorneys' fees. CST then filed a Third-Party Complaint against Clean Print and Dicar on January 23, 2023, alleging tortious interference with contractual and business relations and seeking attorneys' fees. On August 15, 2023, the Court granted in part and denied in part Ecochem's Motion to Dismiss CST's Counterclaims. Clean Print and Dicar now move to dismiss CST's third-party claims for failure to state a claim.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may

survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

"Under Georgia law, tortious interference claims, whether asserting interference with contractual relations, business relations, or potential business relations, share certain common essential elements:"

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business

relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Atlanta Fiberglass USA, LLC v. KPI, Co.*, 911 F. Supp. 2d 1247, 1256 (N.D. Ga. 2012) (quotation marks, alterations, and citation omitted).

The Third-Party Complaint alleges that Clean Print and Dicar tortiously interfered with CST's Agreement with Ecochem and CST's business relations with its existing customers "by using information about CST Customers and other information received from Ecochem to contact, sow confusion with, and seek business from CST Customers." (Third-Party Compl. ¶¶ 93, 100). In support of their Motion to Dismiss, Clean Print and Dicar argue that CST's tortious interference with contractual and business relations claims fail to plausibly allege that they engaged in any wrongful conduct that induced a breach of contract or interfered with CST's business relations. (Br. in Supp. of 3P Defs.' Mot. to Dismiss, at 1). The Court considers the alleged tortious interference with contractual and business relations in turn.

### A. Tortious Interference with Contractual Relations

Clean Print and Dicar argue that CST's interference with contractual relations claim fails because Ecochem never breached its Agreement with CST. (Br. in Supp. of 3P Defs.' Mot. to Dismiss, at 4). Specifically, Clean Print and Dicar take issue with CST's alleged failure to deliver certain customer lists to Ecochem, which they claim constituted a breach of the Agreement that excused Ecochem's performance obligations. (*Id.* at 9–10). As CST points out in its

5

response brief, Clean Print and Dicar rehash arguments here that Ecochem previously advanced in its Motion to Dismiss CST's Counterclaims. (Resp. Br. in Opp'n to 3P Defs.' Mot. to Dismiss, at 9 n.8). For the reasons stated in the Order denying in part Ecochem's Motion to Dismiss, the Court agrees with CST that it states a plausible breach of contract counterclaim against Ecochem. (*See* Doc. 55, at 6–7). Therefore, Clean Print and Dicar are not entitled to dismissal of CST's tortious interference with contractual relations claim on this ground. Because Clean Print and Dicar offer no other theories in support of dismissal, their Motion to Dismiss should be denied as to CST's tortious interference with contractual relations claim.

B. **Tortious Interference with Business Relations**

Clean Print and Dicar next argue that CST fails to plausibly allege wrongful conduct, malice, and causation of actual harm that would support a plausible tortious interference with business relations claim. (Br. in Supp. of 3P Defs.' Mot. to Dismiss, at 10–14). Regarding wrongful conduct, Clean Print and Dicar contend that CST's allegations fail to establish improper action on their part because Ecochem informed CST of its intention to set up Clean Print as its distributor without competing for CST's accounts and because the Agreement permitted Clean Print and Dicar to compete against CST. (*Id.* at 10–11). In response, CST reiterates that it alleges that "Clean Print and Dicar made false representations to CST's customers that damaged CST's customer relationships" and cites several examples of such allegations in its Third-Party

6

Complaint. (Resp. Br. in Opp'n to 3P Defs.' Mot. to Dismiss, at 14). The Court concludes that CST plausibly pleads wrongful conduct to support its tortious interference with business relations claim. Clean Print and Dicar's contention that the Agreement permitted their competition against CST misses the mark because CST's tortious interference claim is premised upon business relations with its own customers, not with Ecochem. Moreover, if Clean Print and Dicar indeed contacted current CST customers and falsely informed them that CST was "going away," (Third-Party Compl. ¶ 65), such conduct would constitute a misrepresentation sufficient to support its tortious interference claim. *See Fortson v. Brown*, 302 Ga. App. 89, 92 (2010).[2]

Regarding malice, Clean Print and Dicar claim that CST has not demonstrated that they engaged in any unauthorized interference, and they argue, without citing any legal authority, that even assuming they solicited CST customers, their purported tortious interference is excused by CST's failure to provide Ecochem with customer lists. (Br. in Supp. of 3P Defs.' Mot. to Dismiss, at 12). These arguments are borderline frivolous. CST clearly alleges that Clean Print and Dicar acted "with knowledge of [its] rights and

---

[2] Clean Print and Dicar also claim that CST fails to state a tortious interference with business relations claim because it "cannot identify a single CST customer whom it has allegedly lost to" them. (Reply Br. in Supp. of 3P Defs.' Mot. to Dismiss, at 6). But CST need not have actually identified the lost customer to state a claim at the motion to dismiss stage. CST's allegation that a customer stopped buying an Ecochem product from it is sufficient. (Third-Party Compl. ¶ 85).

with the intent to interfere with them" and thus plausibly alleges malice. *S. Parts & Eng'g Co., LLC v. Air Compressor Servs., LLC*, 2014 WL 667958, at *4 (N.D. Ga. Feb. 20, 2014); (Third-Party Compl. ¶¶ 60–62).

Finally, Clean Print and Dicar argue that CST fails to allege a causal link between their actions and any alleged harm to CST's business relations. (Br. in Supp. of 3P Defs.' Mot. to Dismiss, at 13). The Court concludes that CST's allegations regarding certain lost customers are indeed sufficient to support causation for its claim. (Third-Party Compl. ¶¶ 83–85). Therefore, CST has plausibly pleaded its tortious interference with business relations claim, and dismissal is improper.

### C. Attorneys' Fees

Finally, Clean Print and Dicar seek dismissal of CST's attorneys' fees claim for lacking a valid underlying claim. (Br. in Supp. of 3P Defs.' Mot. to Dismiss, at 14). Having found that CST plausibly states its tortious interference claims, its derivative attorneys' fees claim is properly pleaded.

### IV. Conclusion

For the foregoing reasons, the Third-Party Defendants' Motion to Dismiss [Docs. 46, 47] is DENIED.

SO ORDERED, this ___26th___ day of September, 2023.

*[signature: Thomas W. Thrash]*
THOMAS W. THRASH, JR.
United States District Judge

8